421 So.2d 1113 (1982)
Thomas Brett HOUCK, Appellant,
v.
STATE of Florida, Appellee.
No. YY-193.
District Court of Appeal of Florida, First District.
November 17, 1982.
*1114 Melanie Ann Hines, Asst. Public Defender, Tallahassee, for appellant.
Jim Smith, Atty. Gen. and Richard A. Patterson, Asst. Atty. Gen., Tallahassee, for appellee.
SHIVERS, Judge.
Houck appeals from his conviction for possession of more than twenty grams of marijuana with intent to sell. He questions several aspects of the pretrial hearing held on his motion to suppress certain of his extrajudicial statements as being obtained involuntarily. We reverse and remand for a new trial including a de novo determination of the voluntariness of appellant's extrajudicial statements.
Franklin County Sheriff Jack Taylor, Jr. saw Houck at the Franklin County Courthouse on November 1, 1979, and knowing that appellant had failed to appear on an unrelated grand theft charge, arrested him. Sheriff Taylor took appellant to the sheriff's department and began to discuss a recent marijuana shipment with him. It is disputed whether appellant was read his Miranda rights. Houck advised Sheriff Taylor that he knew all about the marijuana, which was brought in on the shrimp *1115 boat "Fancy Free", since he had captained the boat and helped unload it. Furthermore, appellant told Sheriff Taylor he would cooperate in the investigation of the incident and help recover the marijuana.
The appellant and Sheriff Taylor offer differing versions of the discussion which transpired in Sheriff Taylor's office. Houck testified that he was questioned by Sheriff Taylor in the presence of Mr. Elzie, an assistant state attorney in Franklin County, and that Taylor and Elzie threatened him with twenty-five years imprisonment on the grand theft charges if he did not admit involvement in the "Fancy Free" case. Appellant claims he was told that his fingerprints had been found on the "Fancy Free" but that he would not be charged in federal or state court with his involvement in the "Fancy Free" case if he cooperated. Houck believed at the time that Mr. Elzie, a lawyer, was operating in his behalf. Although he was later given a court-appointed attorney, Houck testified that the attorney did not advise him to seek immunity for his statements or formalize a plea agreement. A formal written statement given by Houck states that it would not be used against him at trial, but Houck testified that he believed the same to be true of all his statements. Sheriff Taylor, on the other hand, testified that he did not threaten, coerce or make any promises to appellant other than to speak with the prosecutors on appellant's behalf.
Following the discussion in Sheriff Taylor's office, the case was assigned to Sergeant Williams, a member of the Big Bend Task Force. Over the next several months appellant cooperated with law enforcement authorities in their attempt to recover the marijuana which had been transported on the "Fancy Free". On one occasion, Houck acted as a confidential informant, wearing a body bug when he went to the house of one of his co-defendants about the marijuana. During this period of time when appellant was cooperating with authorities, he made many statements to law enforcement officers implicating himself in the "Fancy Free" marijuana shipment. Houck even initiated many of these statements, telephoning Sergeant Williams on several occasions to give him more details about the "Fancy Free". At trial, however, Sergeant Williams admitted that when he first spoke to appellant concerning the "Fancy Free" he told him that he would see to it that appellant got maximum jail time on the grand theft charge unless he cooperated.
After being charged for possession of marijuana in connection with the "Fancy Free" incident, appellant moved to suppress his extrajudicial statements and a hearing was held. At that hearing, after listening to appellant's testimony concerning his initial discussion with Sheriff Taylor and Mr. Elzie, the trial court recessed the proceeding and went off the record. Upon returning, the court announced that during the recess a telephone call had been placed to Assistant State Attorney Elzie in Carrabelle, Florida. The court then stated on the record the substance of the conversation with Mr. Elzie. Mr. Elzie had, apparently, denied ever being in an interrogation session with the appellant. Defense counsel promptly objected to the consideration of unsworn testimony by the court. Later in the hearing the court and defense counsel discussed the veracity of Mr. Elzie and whether he might have been hedging during the telephone conversation. This discussion concluded with the court stating on the record "I have no reason to doubt Mr. Elzie was telling the truth."
The court eventually denied Houck's motion to suppress. Appellant's incriminating extrajudicial statements were admitted against him at trial, along with other evidence, and he was convicted and sentenced. Although Houck raises several points on appeal, only those relating to the trial court's conduct of the suppression hearing merit discussion.
An unsworn witness is not competent to testify. Crockett v. Cassels, 95 Fla. 851, 116 So. 865 (1928). Section 90.605, Florida Statutes (1981), requires that "each witness shall declare that he will testify truthfully, by taking an oath or affirmation... ." (emphasis added). The only exception *1116 made by this statute is for young children. Id. It is clear from the record that not only did the trial court solicit unsworn testimony by Assistant State Attorney Elzie, but also that this testimony was considered by the court. At one point the court stated. "The fact of the matter is Mr. Elzie can't be telling the truth and Mr. Houck be telling the truth too."
Furthermore, the trial court appeared to place the burden of proof on the issue of voluntariness on defendant. Before denying Houck's motion to suppress the trial court stated, "I'm not persuaded that this statement was not freely and voluntarily given and I cannot say as a matter of law that it was not." (emphasis added) This statement implies that the defendant had the burden to prove that his statements were not freely and voluntarily given, and this placement of the burden of proof is contrary to law. Lego v. Twomey, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); Peterson v. State, 382 So.2d 701 (Fla. 1980). The burden of proof must be on the prosecution to show that a defendant's extrajudicial statements are voluntarily made, and a finding of voluntariness must be made by the trial court and appear on the record with unmistakable clarity. Sims v. Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593 (1967).[1]
In light of the foregoing, we find it unnecessary to reach appellant's further contention that the trial court did not decide the voluntariness issue at all since the court stated that the issue would be left for the jury.[2]
Appellant's conviction and sentence are REVERSED, and this cause REMANDED for a new trial including proceedings for a de novo determination of the voluntariness of appellant's extrajudicial statements.
ROBERT P. SMITH, Jr., C.J., and THOMPSON, J., concur.
NOTES
[1] Appellant contends that the trial court's finding of voluntariness does not appear on this record with unmistakable clarity as required by McDole v. State, 283 So.2d 553 (Fla. 1973). We note that the strict requirement of McDole that an express finding must appear on the record has been modified. Antone v. State, 382 So.2d 1205 (Fla. 1980), holds that due process is not offended when the issue of voluntariness is specifically before the judge and he determines that the statements are admissible without using the magic word "voluntary". Id. at 1213. It is still true, however, that "[i]deally, the trial judge should specify his conclusions concerning the voluntariness of a disputed confession or inculpatory statement." Id. at 1212-1213.
[2] It is not error for a trial judge to rule on the voluntariness issue and then instruct the jury on voluntariness. A jury may still find a confession to be involuntary and disregard it, despite a judge's finding that it was voluntary. Sims, supra; McDole, supra. If, however, a trial judge allowed the jury to make the primary determination of voluntariness, it would be reversible error. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).